UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| STEPHEN BUSHANSKY, | : <br> : <br> : Case No._____ <br> : <br> : <br> : **COMPLAINT FOR VIOLATIONS OF** <br> : **THE FEDERAL SECURITIES LAWS** <br> : <br> : JURY TRIAL DEMANDED <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Plaintiff, | |
| v. | |
| VECTIVBIO HOLDING AG, THOMAS F. WOIWODE, PAUL R. CARTER, WOUTER JOUSTRA, SANDIP KAPADIA, LUCA SANTARELLI, HANS SCHIKAN, and MURRAY STEWART, | |
| Defendants. | |

---

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action against VectivBio Holding AG ("VectivBio" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to

which VectivBio will be acquired by Ironwood Pharmaceuticals, Inc. ("Ironwood") (the "Proposed Transaction").

2. On May 22, 2023, VectivBio issued a press release announcing that it had entered into a Transaction Agreement (the "Merger Agreement"), to sell VectivBio to Ironwood. Under the terms of the Merger Agreement, Ironwood will acquire each outstanding share of VectivBio common stock for $17.00 in cash (the "Offer Price"). Pursuant to the Merger Agreement, Ironwood commenced the Tender Offer on May 31, 2023. The Tender Offer is scheduled to expire at one minute following 11:59 p.m., Eastern Time, on June 28, 2023.

3. On May 31, 2023, VectivBio filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement, which recommends that VectivBio stockholders tender their shares in favor of the Tender Offer, omits or misrepresents material information concerning, among other things: (i) VectivBio management's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Centerview Partners LLC ("Centerview"); and (iii) the background of the Proposed Transaction. Defendants authorized the issuance of the false and misleading Recommendation Statement in violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act.

4. In short, the Proposed Transaction will unlawfully divest VectivBio's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders. To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. VectivBio's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of VectivBio.

9. Defendant VectivBio is a Swiss corporation, with its principal executive offices located at Aeschenvorstadt 36, 4051 Basel, Switzerland. VectivBio is a clinical stage biopharmaceutical company. The Company's common stock is traded on the Nasdaq Global Select Market under the ticker symbol "VECT."

10. Defendant Thomas F. Woiwode ("Woiwode") has been Chair of the Board and a director of the Company at all relevant times.

11. Defendant Paul R. Carter ("Carter") has been a director of the Company at all relevant times.

12. Defendant Wouter Joustra ("Joustra") has been a director of the Company at all relevant times.

13. Defendant Sandip Kapadia ("Kapadia") has been a director of the Company at all relevant times.

14. Defendant Luca Santarelli ("Santarelli") is founder of the Company and has been Chief Executive Officer ("CEO") and a director at all relevant times.

15. Defendant Hans Schikan ("Schikan") has been Lead Independent Director since 2019 and a director of the Company at all relevant times.

16. Defendant Murray Stewart ("Stewart") has been a director of the Company at all relevant times.

17. Defendants identified in paragraphs 10 to 16 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18. Ironwood is a leading gastrointestinal ("GI") healthcare company. It is a pioneer in the development of LINZESS® (linaclotide), the U.S. branded prescription market leader for adults with irritable bowel syndrome with constipation (IBS-C) or chronic idiopathic constipation (CIC).

## SUBSTANTIVE ALLEGATIONS

**Company Background**

19. VectivBio is a global clinical-stage biotechnology company focused on transforming and improving the lives of patients with severe rare conditions. Lead product candidate apraglutide is a next-generation, long-acting synthetic GLP-2 analog being developed

4

for a range of rare gastrointestinal diseases where GLP-2 can play a central role in addressing disease pathophysiology, including short bowel syndrome with intestinal failure (SBS-IF) and Acute Graft-Versus-Host Disease (aGVHD).

20.     The Company is also advancing its modular, small molecule CoMET platform to address a broad range of previously undruggable Inherited Metabolic Diseases ("IMDs").  CoMET leverages innovative chemistry, based on a proprietary stabilized pantetheine backbone, to restore fundamental cellular metabolism in pediatric populations with IMDs characterized by a deficit of energy metabolism caused by the depletion of functional Coenzyme A ("CoA").  Candidates from the CoMET platform are initially being evaluated in methylmalonic acidemia ("MMA"), propionic acidemia ("PA"), and other organic acidemias.

21.     On April 19, 2023, VectivBio announced its full year 2022 financial results and business developments.  In October 2022, the Company announced positive interim data from the Company's ongoing Phase 2 STARS Nutrition study evaluating the safety, pharmacokinetics and efficacy of apraglutide, an investigational new drug that is a next-generation, long-acting synthetic GLP-2 agonist, in adult patients with Short Bowel Syndrome with Intestinal Failure (SBS-IF) and Colon-in-Continuity (CIC).  The STARS Nutrition clinical program is the first-ever study prospectively evaluating the clinical benefit of a GLP-2 agonist specifically in a CIC patient population.  Patients with CIC anatomy represent over half of the total SBS-IF patient population and are underserved by current treatment options.  VectivBio is conducting the STARS (**ST**udy of **A**p**R**aglutide in **S**BS) Phase 3 global program studying apraglutide in patients with Short Bowel Syndrome with Intestinal Failure (SBS-IF) with 93 sites in 18 countries, including multiple sites in Japan. STARS represents the largest global Phase 3 study ever conducted in SBS-IF targeting a total of 144 patients, stratified 50/50 for Stoma and CIC anatomical subtypes, and the first Phase

3 study to prospectively evaluate safety and efficacy of a GLP-2 agonist in SBS-IF according to patient's remnant bowel anatomy. Reflecting on the Company's progress, defendant Santarelli stated:

> 2022 was a very good year for VectivBio as we made significant progress against our R&D and corporate objectives, despite the challenging biotech environment. With respect to R&D activities, we advanced our pivotal program for apraglutide in patients with short bowel syndrome with intestinal failure (SBS-IF). This includes the Phase 3 STARS study, where we completed enrollment of the colon-in-continuity (CIC) cohort. We also made significant progress with the Phase 2 STARS Nutrition study, the first-ever dedicated clinical study in the subset of SBS-IF patients with CIC where we reported positive interim data. We've also advanced our STARGAZE proof-of-concept study in acute Graft-versus-Disease (aGvHD) achieving 50% of the enrollment target, enabling us to perform our pre-planned interim analysis by end of Q2.
>
> Regarding our key corporate activities, last year we strengthened our financial position through a combination of two equity raises, the establishment of a loan facility and an important Japan licensing deal with Asahi Kasei Pharma. In total we gained access to up to $284 million in new funds and extended our cash runway to more than 12 months after our anticipated Phase 3 results.
>
> Looking ahead, we see tremendous momentum in 2023, with important upcoming data readouts expected throughout the year. These include six-month data from our Phase 2 STARS Nutrition in early May, interim data from our STARGAZE study by the end of Q2 2023, as well as the completion of enrollment of the Phase 3 STARS study in Q2, which we expect will enable us to have topline data by the end of 2023. These data will position us for a filing in SBS in 2024 and further establish the broad potential of apraglutide in treating additional severe, rare gastrointestinal diseases beyond SBS. Also in 2023, we continue to execute our comprehensive launch readiness plan, with the aim of realizing the full market potential of apraglutide in SBS-IF.

**The Proposed Transaction**

22. On May 22, 2023, VectivBio and Ironwood issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> BOSTON and BASEL, Switzerland – May 22, 2023 – Ironwood Pharmaceuticals, Inc. ("Ironwood") (Nasdaq: IRWD), a GI-focused healthcare company, and VectivBio Holding AG ("VectivBio") (Nasdaq: VECT), a clinical-stage biopharmaceutical company pioneering novel, transformational treatments for severe rare gastrointestinal conditions, today announced that they have entered into

6

a definitive agreement for Ironwood to acquire VectivBio for $17.00 per share in an all-cash transaction with an estimated aggregate consideration of approximately $1 billion, net of VectivBio cash and debt (the "Transaction"). The acquisition price represents a premium of 80% relative to the volume-weighted average share price over the previous 90 trading days. The Transaction was approved by both the Ironwood and VectivBio Boards of Directors and the Transaction Agreement was entered into on May 21, 2023. The Transaction is conditioned upon, among other things, the tender of shares representing more than 80% of VectivBio's issued and outstanding shares and other customary conditions. Orbimed, Forbion and Versant Ventures, and VectivBio's directors and officers, jointly representing 28.6% of VectivBio's shareholdings, entered into tender and support agreements pursuant to which such supporting shareholders agreed, among other things, to tender their shares in the tender offer.

Headquartered in Basel, Switzerland, VectivBio is a clinical-stage biotechnology company focused on the discovery and development of treatments for severe, rare conditions, including Short Bowel Syndrome with Intestinal Failure (SBS-IF) and acute Graft versus Host Disease (aGvHD). SBS-IF is a severe malabsorptive condition requiring ongoing I.V. administration of fluids and nutrients and is associated with significant morbidity and mortality, high economic burden, and an impaired quality of life. A substantial number of SBS-IF patients remain dependent on chronic parenteral support, and there is considerable unmet need in this patient population, which has an estimated addressable population of 18,000 adult patients across the U.S., Europe, and Japan. aGVHD is an immunologically mediated disease occurring in individuals undergoing allogeneic hemopoetic stem cell transplantation (HSCT) where donor immune cells react against the host recipient. The gastrointestinal system is among the most common sites affected by acute GVHD, and severe manifestations of aGvHD of the gut portends a poor prognosis in patients after HSCT.

VectivBio's lead investigational asset, apraglutide, is a next-generation, GLP-2 analog which has shown compelling data to date and is currently in Phase 3 with plans for topline readout by year's end. Apraglutide has the potential to be the best-in-class GLP-2 therapy for the treatment of SBS-IF based on its potency and pharmacological properties, unique convenience of weekly dosing, and Phase 3 study designed to evaluate clinical benefit for both SBS-IF stoma and colon-in-continuity patients. If successful and approved, Ironwood believes apraglutide presents an opportunity to reach $1 billion in peak net sales.

This Transaction has the potential to strengthen Ironwood's innovative portfolio and pipeline to advance the treatment of GI diseases and redefine the standard of care for GI patients. With its proven track record, Ironwood is well-positioned to leverage its expertise in clinical development, regulatory pathways, medical affairs and commercial execution to progress and maximize the potential value of apraglutide for patients, physicians and shareholders.

"The acquisition of VectivBio, including its compelling asset, apraglutide, is an ideal strategic fit with Ironwood," said Tom McCourt, chief executive officer of Ironwood.  "With the success of our blockbuster product, LINZESS, we have built a strong GI commercial function, healthy cash flow generation, and meaningful EBITDA.  We are confident that with our GI expertise, commercial capabilities, and robust balance sheet, we are well-positioned to continue developing apraglutide, with the goal of getting it into the hands of the patients who need it the most and potentially generate significant and sustainable value for shareholders."

"We are delighted to enter into this agreement with Ironwood to advance the development and commercialization of innovative therapies targeted at GI and rare diseases, which is the mission of VectivBio" said Luca Santarelli, M.D., chief executive officer and founder of VectivBio.  "Ironwood's capabilities and established track record in GI make it the ideal company to bring apraglutide, if approved, to patients suffering from SBS-IF and other serious GI conditions.  We believe this Transaction represents the best outcome for our patients and shareholders."

**Strategic and Financial Benefits**
The acquisition of VectivBio and its lead investigational asset apraglutide provides a significant opportunity to accelerate the next growth horizon for Ironwood. The Transaction has the potential to deliver meaningful strategic and financial benefits, including:

- **Strengthens and complements Ironwood's portfolio**.  Today, Ironwood has a blockbuster asset in LINZESS, a strong GI commercial function, and an exciting pipeline of development assets.  Ironwood believes that this transaction will further strengthen its portfolio and pipeline, with the potential to meaningfully accelerate its growth horizon.  With approximately 18,000 addressable adult patients suffering from SBS-IF across U.S., Europe and Japan, apraglutide, if successfully developed, has significant revenue potential given its orphan drug designation for the treatment of adult patients with SBS-IF, compelling data to date, convenient weekly dosing and potential expansion into additional GI conditions, including aGvHD.

- **Leverages Ironwood's existing infrastructure**.  Ironwood has strong expertise in clinical development, regulatory pathways, and medical affairs, as well as a robust commercial infrastructure.  Additionally, Ironwood also has existing relationships within the gastroenterologist community, and a knowledgeable specialty salesforce that currently addresses a significant portion of apraglutide's potential prescriber base.  Ironwood intends to leverage its proven expertise from LINZESS's successful commercialization and ongoing lifecycle management to maximize the apraglutide opportunity.

- **Supports long-term profitability and cash-flow generation**. Apraglutide is a late-stage clinical asset with the potential to reach $1 billion in peak net sales if successfully developed and approved. The addition of apraglutide provides another high-growth potential revenue stream, diversifies Ironwood's portfolio and pipeline, and potentially extends Ironwood's growth horizon through the 2030s.

- **Compelling financial profile**. Ironwood anticipates the pro forma company will remain positioned to deliver sustained profits and cash flows. Ironwood expects to generate greater than $175 million in operating cash flows each year on a pro forma basis ahead of apraglutide commercial launch. The Transaction, assuming successful commercialization of apraglutide, is expected to be accretive to earnings per share beginning in 2026.

**Transaction Terms and Closing**

Under the terms of the Transaction Agreement, Ironwood will commence a tender offer to purchase all of VectivBio's outstanding ordinary shares for $17.00 per share in cash. The closing of the tender offer will be subject to certain conditions, including the tender of more than 80% of the total number of VectivBio's outstanding shares, the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, certain shareholder approvals and other customary closing conditions (the "Offer Conditions"). VectivBio's Board of Directors recommends that VectivBio shareholders tender their shares in the tender offer. The Transaction, which was approved by each company's Boards of Directors, is expected to close in the second half of 2023, subject to the Offer Conditions. Assuming the closing of the tender offer and Ironwood holding at least 90% of the outstanding shares of VectivBio, Ironwood expects to acquire any shares of VectivBio not tendered into the tender offer through a merger of VectivBio with and into a subsidiary of Ironwood for the same per share consideration as will be payable in the tender offer.

Orbimed, Forbion and Versant Ventures, and VectivBio's directors and officers jointly representing 28.6% of VectivBio's shareholdings, entered into tender and support agreements pursuant to which such supporting shareholders agreed, among other things, to tender their shares in the tender.

VectivBio will covene an extraordinary general meeting of shareholders on June 26, 2023 for the purpose of obtaining certain shareholder approvals in connection with the Transaction.

Ironwood expects to finance the acquisition with cash on hand and funds drawn through a four-year, $500 million revolving credit facility entered in connection with the Transaction.

Ironwood expects to provide updated full year 2023 adjusted EBITDA financial guidance upon closing of the transaction.

**Advisors**

Citi, J.P. Morgan Securities, LLC, RBC Capital Markets, LLC, and Wells Fargo Securities, LLC are serving as financial advisors to Ironwood on the transaction.

Financing for the transaction has been provided by Citibank, N.A., Citizens Bank, N.A., JPMorgan Chase Bank, N.A., Royal Bank of Canada, and Wells Fargo Bank, National Association.

Latham and Watkins LLP and Advestra AG are serving as legal advisors to Ironwood.

Centerview Partners LLC and BofA Securities, Inc. are serving as financial advisors to VectivBio, and Cooley (UK) LLP and Homburger AG are serving as legal advisors to VectivBio.

## Insiders' Interests in the Proposed Transaction

23.     VectivBio insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of VectivBio.

24.     Notably, VectivBio insiders stand to reap substantial financial benefits for securing the deal with Ironwood. The following table sets forth the value of cash payments the Company's executive officers and directors stand to receive in connection with tendering their shares in the Tender Offer:

| Name of Beneficial Owner | Number of Shares Beneficially Owned (#) | | Implied Cash Value of Shares Beneficially Owned ($)[1] | |
|---|---|---|---|---|
| | Total | (Number of which are Restricted Shares) | Total | (Value of which relates to Restricted Shares) |
| **Executive Officers** | | | | |
| Dr. Luca Santarelli, Chief Executive Officer and Director | 1,543,187 | 25,625 | 26,234,179 | 435,625 |
| Dr. Claudia D'Augusta, Chief Financial Officer | 454,000 | 46,720 | 7,718,000 | 794,240 |
| Dr. Christian Meyer, Chief Operating Officer | 354,329 | 35,775 | 6,023,593 | 608,175 |
| Kevin Harris, Chief Commercial Officer | 298,613 | 38,540 | 5,076,421 | 655,180 |
| Dr. Alain Bernard, Chief Technology Officer | 0 | 0 | 0 | 0 |
| Dr. Omar Khwaja, Chief Medical Officer | 0 | 0 | 0 | 0 |
| Scott Applebaum, Chief Legal Officer and Corporate Secretary | 0 | 0 | 0 | 0 |
| **Non-Employee Directors** | | | | |
| Dr. Thomas Woiwode, Chairman of the Board of Directors | 24,499 | 0 | 416,483 | 0 |
| Sandip Kapadia, Director | 73,093 | 0 | 1,242,581 | 0 |
| Hans Schikan, Director | 71,050 | 5,775 | 1,207,850 | 98,175 |
| Paul Carter, Director | 0 | 0 | 0 | 0 |
| Murray Stewart, Director | 17,496 | 0 | 297,432 | 0 |
| Wouter Joustra, Director | 0 | 0 | 0 | 0 |
| **All of VectivBio's current directors and executive officers as a group (13 persons)** | 2,836,267 | 152,435 | 48,216,539 | 2,591,395 |

25. Moreover, under the terms of the Merger Agreement, all Company options and restricted stock units ("RSUs") will be converted into the right to receive cash payments upon consummation of the Proposed Transaction. The following tables set forth the value of cash payments that VectivBio's directors and executive officers stand to receive in connection with the consummation of the merger pursuant to their Company equity awards:

| Name | Number of Shares Underlying Options (#) | Number of Shares Underlying Unvested Options (#) | Applicable Exercise Price ($)[1][2] | Amount Payable in Respect of Options ($)[1][3] |
|---|---|---|---|---|
| **Executive Officers** | | | | |
| Dr. Luca Santarelli, Chief Executive Officer and Director | 2,845,000 | 1,652,028 | 12,315,393 | 36,049,607 |
| Dr. Claudia D'Augusta, Chief Financial Officer | 558,000 | 386,186 | 3,201,325 | 6,284,675 |
| Dr. Christian Meyer, Chief Operating Officer | 498,000 | 335,473 | 2,748,541 | 5,717,459 |
| Kevin Harris, Chief Commercial Officer | 310,000 | 257,072 | 2,294,200 | 2,975,800 |
| Dr. Alain Bernard, Chief Technology Officer | 338,000 | 169,377 | 1,249,088 | 4,496,912 |
| Dr. Omar Khwaja, Chief Medical Officer | 710,000 | 473,276 | 4,291,500 | 7,778,500 |
| Scott Applebaum, Chief Legal Officer and Corporate Secretary | 455,000 | 339,957 | 3,399,425 | 4,335,575 |
| **Non-Employee Directors** | | | | |
| Dr. Thomas Woiwode, Chairman of the Board of Directors | 30,000 | 30,000 | 162,000 | 348,000 |
| Sandip Kapadia, Director | 20,000 | 20,000 | 108,000 | 232,000 |
| Hans Schikan, Director | 45,000 | 20,000 | 228,000 | 537,000 |
| Paul Carter, Director | 60,000 | 38,887 | 300,000 | 720,000 |
| Murray Stewart, Director | 20,000 | 20,000 | 108,000 | 232,000 |
| Wouter Joustra, Director | 0 | 0 | 0 | 0 |
| **All of VectivBio's current directors and executive officers as a group (13 persons)** | 5,889,000 | 3,742,256 | 30,405,473 | 69,707,527 |

| Name | Number of Shares Underlying RSU awards (#) | Amount Payable in Respect of RSU awards ($)[1] |
|---|---|---|
| **Executive Officers** | | |
| Dr. Luca Santarelli, Chief Executive Officer and Director | 0 | 0 |
| Dr. Claudia D'Augusta, Chief Financial Officer | 0 | 0 |
| Dr. Christian Meyer, Chief Operating Officer | 0 | 0 |
| Kevin Harris, Chief Commercial Officer | 83,488 | 1,419,296 |
| Dr. Alain Bernard, Chief Technology Officer | 0 | 0 |
| Dr. Omar Khwaja, Chief Medical Officer | 0 | 0 |
| Scott Applebaum, Chief Legal Officer and Corporate Secretary | 0 | 0 |
| **Non-Employee Directors**[2] | | |
| Dr. Thomas Woiwode, Chairman of the Board of Directors | 16,332 | 277,644 |
| Sandip Kapadia, Director | 6,875 | 116,875 |
| Hans Schikan, Director | 0 | 0 |
| Paul Carter, Director | 0 | 0 |
| Murray Stewart, Director | 16,665 | 283,305 |
| Wouter Joustra, Director | 0 | 0 |
| **All of VectivBio's current directors and executive officers as a group (13 persons)** | 123,360 | 2,097,120 |

**The Recommendation Statement Contains Material Misstatements or Omissions**

28. The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to VectivBio's stockholders. The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in the Tender Offer or seek appraisal.

29. Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) VectivBio management's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Centerview; and (iii) the background of the Proposed Transaction.

*Material Omissions Concerning VectivBio Management's Financial Projections*

30. The Recommendation Statement omits material information regarding Company management's financial projections.

31. For example, the Recommendation Statement provides a summary of the Company's risk-adjusted projections, but fails to disclose the specific assumptions underlying the projections, including the specific risk-adjustments made to the projections.

32. Additionally, the Recommendation Statement fails to include (i) stock-based compensation and (ii) the benefit of net operating loss carryforwards over the projection period.

33. The omission of this information renders the statements in the "Certain Financial Projections" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Centerview's Financial Analyses*

34. The Recommendation Statement describes Centerview's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, VectivBio's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining whether to tender their shares in the Tender Offer or seek appraisal.

35. With respect to Centerview's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate range of 12.0% to 14.0%; (ii) quantification of the tax savings from usage of VectivBio's estimated net operating losses of $157 million as of December 31, 2022 and future losses; (iii) quantification of the impact of assumed equity raises in 2023, 2024, and 2025; and (iv) the implied terminal multiples resulting from the analysis.

36.     The omission of this information renders the statements in the "Opinion of Centerview Partners LLC" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning the Background of the Proposed Transaction*

37.     The Recommendation Statement fails to disclose material information concerning the background of the Proposed Transaction.

38.     For example, the Company entered into confidentiality agreements with a party referred to in the Recommendation Statement as "Party A." Yet, the Recommendation Statement fails to disclose whether the confidentiality agreement executed by Party A includes a "don't-ask, don't-waive" ("DADW") standstill provision that is presently precluding Party A from submitting a topping bid for the Company.

39.     The failure to disclose the existence of DADW provisions creates the false impression that Party A could make a superior proposal for the Company. If Party A's confidentiality agreement contains a DADW provision, then Party A can only make a superior proposal by (i) breaching the confidentiality agreement—as in order to make the superior proposal, they would need to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Recommendation Statement.

40.     Any reasonable VectivBio stockholder would deem the fact that a likely topping bidder for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

41.     The omission of this information renders the statements in the "Background of the Offer" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

42. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other VectivBio stockholders will be unable to make an informed decision whether to tender their shares in the Tender Offer or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations
of Section 14(d) of the Exchange Act and SEC Rule 14d-9**

26. Plaintiff repeats all previous allegations as if set forth in full.

27. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting VectivBio stockholders to tender their shares in the Tender Offer.

28. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

29. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

30. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation

Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

31. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the other stockholders of VectivBio, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

32. Plaintiff repeats all previous allegations as if set forth in full.

33. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary to make the statements made, considering the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer.

34. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer or seek appraisal.

35. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff

has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether to tender his shares or seek appraisal.

## COUNT III

### Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

36.     Plaintiff repeats all previous allegations as if set forth in full.

37.     The Individual Defendants acted as controlling persons of VectivBio within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of VectivBio and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

38.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

39.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

40.     In addition, as the Recommendation Statement sets forth at length, and as described

herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

41. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

42. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of VectivBio, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: June 6, 2023

                                                  **WEISS LAW**
                                                  Michael Rogovin
                                                  476 Hardendorf Ave. NE
                                                  Atlanta, GA 30307
                                                  Tel: (404) 692-7910
                                                  Fax: (212) 682-3010
                                                  Email: mrogovin@weisslawllp.com

                                                  *Attorneys for Plaintiff*